AO 91 (Rev. 11/11)  Criminal Complaint



# UNITED STATES DISTRICT COURT
for the
Eastern District of Texas

Clerk, U.S. District Court
Texas Eastern

FILED
AUG - 4 2017

| | |
|---|---|
| United States of America<br>v.<br><br>Mario Ivan Martinez (01)<br>Conrado Depaz Arellano (02)<br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>)      6:17MJ93<br>)<br>)<br>)<br>**SEALED** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 2, 2017__ in the county of __Smith__ in the __Eastern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | On or about August 2, 2017, in the Eastern District of Texas, Mario Ivan Martinez and Conrado Depaz Arellano did conspire to possess with intent to distribute controlled substances, that is, cocaine, in violation of 21 U.S.C. § 846. |

This criminal complaint is based on these facts:

See attached affidavit of Special Agent Jeffry Kennemer

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Jeffry Kennemer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8-4-17

_____
*Judge's signature*

City and state: Tyler, Texas

John D. Love, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jeffry S. Kennemer, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a criminal complaint against **Mario Ivan MARTINEZ** and **Conrado Depaz ARELLANO** for conspiracy to possess with intent to distribute controlled substances, that is, cocaine, in violation of 21 U.S.C. § 846.

2. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since October 1996. I am currently assigned to the DEA Tyler Resident Office. In this position, I am responsible for identifying, investigating, arresting, and prosecuting individuals who violate the drug trafficking laws of the United States, including Title 21 of the United States Code.

3. I am personally familiar with the facts and circumstances set forth in this affidavit through my own investigation and from information provided to me by other law enforcement agencies.

4. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause.

**Affidavit in Support of**
**Criminal Complaint - Page 1**

## FACTS SUPPORTING PROBABLE CAUSE

5. On or about August 2, 2017, United States Border Patrol (USBP) agents stopped **MARTINEZ** on Interstate-20 in Midland, Texas, for a traffic violation. At that time, **MARTINEZ** was found to be in possession of controlled substances, that is, approximately two kilograms of suspected cocaine.

6. After being advised of his *Miranda* rights, **MARTINEZ** told agents that he was traveling to Carthage, Texas, to deliver the cocaine to a then-unidentified subject. According to **MARTINEZ**, he was to receive payment for the transaction and then return to El Paso, Texas. **MARTINEZ** further stated that he had recently delivered a shipment of cocaine to the same individual and had been paid $60,000 in U.S. Currency.

7. **MARTINEZ** told agents that he wished to cooperate and that he was willing to participate in a controlled delivery of the narcotics to Carthage, in the Eastern District of Texas. At that point, USBP Agents contacted the DEA in Midland, Texas.

8. DEA agents interviewed **MARTINEZ** and learned that the cocaine had been secreted in **MARTINEZ's** vehicle in Juarez, Chihuahua, Mexico, by several unidentified subjects. According to **MARTINEZ**, those same subjects also directed him to transport the narcotics to the subject in Carthage. **MARTINEZ** further described that the subjects in Juarez installed an electronic tracker onto his vehicle. **MARTINEZ** stated that the subjects in Mexico were in direct contact with their "associate" in Carthage to confirm that the transport was successful.

**Affidavit in Support of**
**Criminal Complaint - Page 2**

9. The DEA Tyler Resident Office was then contacted by agents from DEA-Midland to coordinate further efforts. As DEA-Midland agents transported **MARTINEZ** to the Eastern District of Texas, numerous recorded telephone calls were made between **MARTINEZ** and the subject in Carthage regarding the narcotics transaction, including **MARTINEZ's** travel progress and his estimated time of arrival to Carthage.

10. **MARTINEZ** told agents that he could recognize the Carthage subject if shown a photo, but he did not know the individual by name.

11. **MARTINEZ** provided the phone number of the Carthage subject. Through social media exploitation, the DEA was able to associate this phone number with the Facebook account of **Conrado Depaz ARELLANO**. The account included a profile photograph. Further social media exploitation identified another Facebook account for an individual with the name Conrado Arellano. However, the suspect phone number provided by **MARTINEZ** was not associated with this second account. The profile picture for the second account depicted a different individual than the one in the profile picture of the account associated with the suspect phone number.

12. I forwarded profile pictures from both Facebook accounts to Special Agent William Price, who was accompanying **MARTINEZ** from Midland. Special Agent Price showed **MARTINEZ** the photographs, and **MARTINEZ** positively identified the individual in the profile picture from the account associated with the suspect phone number as the Carthage subject.

13. DEA-Midland personnel and **MARTINEZ** then arrived in the Kilgore, Texas, area. There, they met with DEA-Tyler agents. At that time, it was learned that on at least one prior trip made by **MARTINEZ** to deliver cocaine to **ARELLANO** several months ago, the two had met at a location in Carthage selected by **ARELLANO**. In that instance, **ARELLANO** drove up to **MARTINEZ's** vehicle and told him to follow from the location to **ARELLANO's** residence in Carthage. Once there, **ARELLANO** paid **MARTINEZ** and took possession of the cocaine. As **MARTINEZ** was providing specifics about this previous transaction, he received several calls from **ARELLANO**, directing **MARTINEZ** where to go and what to do upon his arrival in Carthage.

14. At approximately 10:15 p.m., DEA personnel established surveillance at a predetermined location within the city limits of Carthage. The location was selected by DEA, not **ARELLANO**.

15. At approximately 10:25 p.m., **MARTINEZ** arrived to the location in his vehicle with the cocaine still secreted within it. **MARTINEZ** then contacted **ARELLANO** via telephone and advised him of his whereabouts. **ARELLANO** stated that he would be there shortly and to wait for him there.

16. A short time later, surveillance personnel observed an older model white minivan drive slowly by the location. The minivan was operated by a Hispanic male. Based upon the subject photograph identified by **MARTINEZ**, agents were able to identify the driver as **ARELLANO**.

**Affidavit in Support of**
**Criminal Complaint - Page 4**

17. The minivan parked across the street from the agreed location. **ARELLANO** remained in the vehicle and began visually observing the area. Shortly thereafter, surveillance personnel approached **ARELLANO** and removed him from the vehicle. Two small, clear plastic baggies were found in **ARELLANO's** shirt pocket. Both baggies contained a white powdery substance.

18. I field tested the white powder from the bags with a Reagent test kit. The test resulted in a positive presumptive analysis for cocaine.

19. **ARELLANO** was in possession of multiple Mexican identification cards in the names of different individuals with different addresses. The After **ARELLANO** was advised of his *Miranda* rights, he refused to answer any questions or even provide identifying information.

20. Officials from Homeland Security Investigations were able to positively identify **ARELLANO** through fingerprint analysis.

21. **ARELLANO** and **MARTINEZ** were removed from the area.

22. Subsequently, DEA Special Agent Darby Hodges and I removed the two bundles of suspected cocaine that had been secreted in a hidden compartment underneath the driver's seat in the floorboard of **MARTINEZ's** vehicle. The two packages and two bundles of suspected cocaine were then transported to the DEA-Tyler office for storage.

23. I conducted field tests on the white powder from the two bundles recovered from **MARTINEZ's** vehicle. The white powder received presumptive positive results for cocaine.

**Affidavit in Support of**
**Criminal Complaint - Page 5**

## CONCLUSION

24. Based upon the foregoing, I submit that there is probable cause to believe that **Mario Ivan MARTINEZ** and **Conrado Depaz ARELLANO** have committed a violation of 21 U.S.C. § 846. Accordingly, I request that arrest warrants issue as specified in the criminal complaint.

Respectfully submitted,

_____
Jeffry S. Kennemer
DEA Special Agent

Sworn to before me and subscribed in my presence at Tyler, Texas, on this 4th day of August, 2017.

_____
Honorable John D. Love
United States Magistrate Judge
Eastern District of Texas